RICHARD ARNOLD and )
BARBARA ARNOLD, his wife, )
)
    Plaintiffs/Appellees, ) Appeal No.
) 01-A-01-9505-CV-00203
v. )
) Davidson Circuit
GLORIA FORD, ) No. 93C-1575
)
    Defendant/Appellee, )
)
and )
)
THE METROPOLITAN GOVERNMENT OF )
NASHVILLE AND DAVIDSON COUNTY, )
)
    Defendant/Appellant. )

**FILED**

**December 14, 2001**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE


THE HONORABLE MARIETTA M. SHIPLEY, JUDGE

JAMES R. OMER, JR.
James R. Omer & Associates
430 Third Avenue North, Suite 200
Trial Lawyers Building
Nashville, Tennessee 37201
    ATTORNEY FOR PLAINTIFFS/APPELLEES


DAVID L. COOPER
Cannon, Cannon & Cooper, P.C.
1000 Northchase Drive
P. O. Box 749
Goodlettsville, Tennessee 37070-0749
    ATTORNEY FOR DEFENDANT/APPELLEE, GLORIA FORD


JAMES L. MURPHY, III      The Department of Law of
Director of Law      The Metropolitan Government
     of Nashville and Davidson
     County
FRANCIS H. YOUNG      204 Metropolitan Courthouse
CRISTI E. SCOTT      Nashville, Tennessee 37201
Metropolitan Attorneys      ATTORNEYS FOR METROPOLITAN
     GOVERNMENT OF NASHVILLE AND
     DAVIDSON COUNTY

AFFIRMED AND REMANDED

SAMUEL L. LEWIS, JUDGE

# O P I N I O N

This is an appeal by defendant/appellant, Metropolitan Government of Nashville and Davidson County ("Metro"), from the judgment of the trial court against it in favor of plaintiffs/ appellees, Richard and Barbara Arnold, and cross-defendant/appellee, Gloria Ford.

Metro presented three issues on appeal. They are as follows: 1) "Whether it was error for the trial court to fail to sever the bench trial on the issue of the Metropolitan Government's liability from the jury trial on the issue of Mrs. Ford's liability"; 2) "Whether a new trial should be granted due to the inconsistent, irreconcilable judgments entered on one body of evidence"; and 3) "Whether the trial court's use of the remittitur procedure was improper."

This case arose out of an automobile accident that occurred in May 1992 in Davidson County, Tennessee. The accident involved the Arnolds and Mrs. Ford and occurred at the intersection of State Route 45 and Rio Vista Drive in Nashville. A different accident had occurred at this same intersection shortly before the Arnold and Ford vehicles collided. Metropolitan police officers, J. B. Hale and Marsha Brown, were directing traffic around the first accident.

The Arnolds' claim against Metro was that the negligence of Officer Hale in giving improper hand signals to Mrs. Ford proximately caused the accident. Metro filed a cross-claim against Mrs. Ford for indemnification, and the court later dismissed this cross-claim. Mrs. Ford filed a cross-claim against Metro also alleging negligence on the part of Officer Hale.

On the morning of the first day of trial, during the pre-trial conference between counsel and the trial court in chambers, counsel for Metro made an oral motion. Pursuant to Tennessee Code Annotated section 29-20-313(b)[1], Metro asked the court to sever the bench trial on Metro's liability from the jury trial on the Arnolds' claim against Mrs. Ford The court overruled Metro's motion. The bench trial as to Metro's liability to the Arnolds and Mrs. Ford proceeded contemporaneously with the jury trial as to Mrs. Ford's liability to the Arnolds.

At the conclusion of the evidence and the arguments of counsel, the court charged the jury, and they retired to deliberate. Later, the jury returned and announced its verdict. The jury found Mrs. Ford 65% at fault and Metro 35% at fault and fixed the Arnolds' total damages at $255,696.95. Upon dismissing the jury, the trial court handed to counsel its memorandum regarding the non-jury claims of the Arnolds and Mrs. Ford against Metro. The court found Metro 60% at fault and Mrs. Ford 40% at fault and fixed the Arnolds' total damages at $360,000.00. In addition, the court awarded Mrs. Ford $37,000.00 on her cross-claim.

The trial court entered final judgment against Metro in favor of the Arnolds and Mrs. Ford on 24 October 1994. It then entered final judgment on the Arnolds' claim against Mrs. Ford on 25 October 1994. Metro then moved for a new trial, and Mrs. Ford

---

[1]

> (b) When suit is brought in circuit court in a case in which there are multiple defendants, one (1) or more of which is a governmental entity or a governmental entity employee whose liability or lack thereof is to be determined based upon the provisions of this chapter and one (1) or more of which is not such governmental entity or governmental entity employee, the case shall be heard and decided by a jury upon the demand of any party. Nothing in this section shall be construed to abridge the right of any party to a trial by jury otherwise granted by the state or federal constitution or any statute.

Tenn. Code Ann. § 29-20-313(b)(Supp. 1994).

filed a motion for judgment in accordance with her motion for directed verdict or alternative motion for a new trial. The trial court entered its memorandum opinion on 22 December 1994 suggesting remittitur as to the Arnolds' judgment against Mrs. Ford. On 9 January 1995, the trial court entered an order making its 22 December 1994 memorandum opinion an order of the court. Later, the Arnolds accepted the trial court's suggested remittitur. Mrs. Ford satisfied the Arnolds' judgment against her, and the court entered an order of satisfaction of judgment and release.

Metro filed its notice of appeal on 19 January 1995. It appealed the final judgment entered against it on 24 October 1994, the final judgment entered against Mrs. Ford on 25 October 1994, and the 9 January 1995 order making the 22 December 1994 memorandum opinion an order of the court. In its brief, Metro stated that when it filed its notice of appeal it was unaware that the court had entered an order, making the memorandum opinion an order of the court, on 9 January 1995.

The facts out of which this controversy arose are as follows.

On 28 May 1992, the Arnolds were in their Plymouth Voyager headed west on State Route 45 in Davidson County. Mrs. Ford was traveling north on Rio Vista Drive in her Plymouth Laser approaching the intersection of State Route 45. Before either the Arnolds or Mrs. Ford arrived at the intersection, an accident had occurred. Metro police officers, J. B. Hale and Marsha Brown, were directing traffic around the wrecked automobiles and the emergency vehicles that had responded to the earlier accident. The officers had agreed between themselves that Officer Brown would stop the east bound traffic on State Route 45 in an attempt to allow Officer Hale to direct north bound traffic on Rio Vista Drive to turn right

4

and head east on State Route 45.

Many cars heading north on Rio Vista Drive followed Officer Hale's instructions and turned right to head east on State Route 45. Mrs. Ford pulled her car up directly in front of Officer Hale and indicated that she wanted to go straight across State Route 45. Officer Hale alleged that she repeatedly motioned Mrs. Ford to turn right and head east because she did not have control over west bound State Route 45. According to the testimony of Officer Hale, Mrs. Ford refused to turn a number of times. Officer Hale decided she had to get Mrs. Ford's vehicle out of the way so traffic behind her could continue to flow out of the intersection. She motioned Mrs. Ford to pull up and over to the side. Officer Hale then left Mrs. Ford's car and resumed directing traffic.

The testimony of Mrs. Ford and several other witnesses was at odds with that of Officer Hale. Mrs. Ford testified that Officer Hale motioned her to go straight across. Witness Cohen saw Officer Hale motion for the car to come through the intersection. Witness Spicer testified that Officer Hale waived Mrs. Ford out into the intersection. Witness Travaglini believed that Officer Hale meant for Mrs. Ford to get moving, and witness Whitaker saw Officer Hale motion Mrs. Ford's car across State Route 45. Although the reason why Mrs. Ford entered the intersection is in dispute, the fact that her doing so resulted in a collision involving her car and the Arnolds' mini-van is not.

We first discuss Metro's issue of whether it was error for the trial court to fail to sever the bench trial from the jury trial of Mrs. Ford's liability.

The Tennessee Governmental Tort Liability Act, Tennessee Code Annotated title 29 chapter 20, provides that the court shall

5

give a governmental entity a bench trial and that the judge shall hear the case without the intervention of a jury. Tenn. Code Ann. §§ 29-20-307, -313(b) (1980 & Supp. 1994). The trial court conducted a bench trial for Metro on all of its issues. Nevertheless, it is Metro's insistence that the statute prohibits a trial judge from conducting a bench trial for a governmental entity while it conducts a jury trial for a private defendant.

We are of the opinion that the trial court followed the dictates of the Act. The court heard the evidence, saw and heard the witnesses testify, and issued its memorandum opinion that incorporated its finding of fact and conclusions of law. Metro relies on *Austin v. County of Shelby*, 640 S.W.2d 852 (Tenn. App. 1982), to support its contention that section 29-20-313(b) required the trial court to sever the jury and non-jury portions of the case. In actuality, the holding in *Austin* does require severance, but it is silent as to any specific procedures for a trial court to use in granting separate trials. *Austin*, 640 S.W.2d at 854. In a later case, this court permitted the trial court to consider non-jury issues while simultaneously allowing the jury to decide other issues. *Betty v. Metropolitan Gov't of Nashville and Davidson Co.*, 835 S.W.2d 1 (Tenn. App. 1992). The trial court, in the instant case, considered the evidence separate and apart from the jury and rendered a verdict on Metro's liability. Both the trial court and this court gave Metro an opportunity to cite authority supporting multiple trials, but Metro failed to do so.

We now turn to Metro's second issue of whether this court should grant it a new trial? Metro put forth two arguments in support of its position. First, Metro argued that the inconsistent verdicts require that this court remand for a new trial. It is this court's opinion, however, that the verdict of the trial court

6

on the non-jury issue was not inconsistent with the jury's verdict. "A verdict is inconsistent when a jury on a single set of facts and circumstances reaches differing conclusions of fact and law." *McCall v. Owens*, 820 S.W.2d 748, 752 (Tenn. App. 1991). In the instant case, the trial court found that both Metro and Mrs. Ford were guilty of negligence and were the proximate causes of the accident. The jury also found that both Metro and Mrs. Ford were guilty of negligence and were the proximate causes of the accident. Under the definition of an inconsistent verdict as set forth in *McCall*, this result is not inconsistent. Similarly, the percentage of negligence ascribed to Metro by the court and the jury was different, but not inconsistent. Therefore, Metro's first argument is without merit.

Second, Metro argued that the trial court's misapplication of Tennessee Rule of Civil Procedure 59.06, the Thirteenth Juror Rule, entitled it to a new trial. The premise of Metro's argument was that the trial court could not approve a verdict containing findings of percentages of fault which were different than the trial court's own findings. Rule 59.06 applies to jury verdicts, not trial court decisions. *See Cumberland Tel. & Tel. Co. v. Smithwick*, 112 Tenn. 463, 79 S.W. 803 (1904) (discussing the role of the judge as the thirteenth juror and the purpose behind such a role). Because the trial court decided the issues of Metro's liability exclusively, the Rule is inapplicable.

In addition, note that appellate courts "will not reverse for immaterial errors." *State v. Delinquent Taxpayers*, 26 Tenn. App. 62, 69, 167 S.W.2d 690, 693 (1942). Where the trial court has jurisdiction of the subject matter and the parties, mere irregularities in the exercise of that jurisdiction will not render the proceedings void in the absence of prejudice. *See Ridgley v.*

*Bennett*, 81 Tenn. 210, 217-19 (1884). Metro neither alleged nor demonstrated any prejudice as a result of the procedure used in the trial of this case. Metro has failed to point to anything in the record that constitutes error sufficient to compel this court to grant it a new trial.

Finally, this court will not interfere with a trial court's findings of fact unless the evidence preponderates against such findings. Tennessee Rule of Appellate Procedure 13(d) provides: "review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." As previously noted, there was conflicting testimony about whether Officer Hale directed Mrs. Ford's vehicle to go through the intersection and cross State Route 45. Officer Hale testified that she motioned for Mrs. Ford to pull up and over to the side. Mrs. Ford testified that Officer Hale motioned her to go straight across the intersection. Witness Cohen saw Officer Hale motion for the car to come through the intersection. Witness Spicer testified that Officer Hale waived Mrs. Ford out into the intersection. Witness Travaglini believed that Officer Hale meant for Mrs. Ford to get moving. Witness Whitaker saw Officer Hale motion Mrs. Ford's car across State Route 45 where Mrs. Ford collided with the Arnolds' vehicle. Clearly, the evidence does not preponderate against the judgment of the trial court, but does preponderate in favor of the Arnolds and against Metro.

Metro's third issue of whether the trial court's use of remittitur was proper is without merit as well. The Tennessee Supreme Court has consistently approved the use of remittitur to cure excessive jury verdicts. *Pitts v. Exxon Corp.*, 596 S.W.2d

8

830, 835 (Tenn. 1980). In *Pitts*, the court stated as follows:

> Where either remittitur or additur is used, the
> choice of a new trial and new jury or appellate
> review is available to the party in whose favor the
> adjustment is made, and appellate review is
> available to the other party where the appellate
> courts may either adjust the verdict to conform to
> the evidence if statutorily and judicially
> authorized to do so, and, where not, a new trial
> may be granted.

*Id.* at 836. Thus, it is apparent that appellate review of remittitur or additur is available to those plaintiffs and defendants who are parties to the court's proposed agreement. In this case, Metro had absolutely nothing to do with the remittitur. The court's suggested remittitur applied only to the liability of Mrs. Ford to the Arnolds as decided by the jury. Thus, Metro did not have standing to raise this issue on appeal.

Mrs. Ford presents the issue of whether "this is a frivolous appeal which warrants the Court to award Ford her costs, expenses and reasonable attorney's fees." Tennessee Code Annotated section 27-1-122 provides:

> When it appears to any reviewing court that the
> appeal from any court of record was frivolous or
> taken solely for delay, the court may, either upon
> motion of a party or of its own motion, award just
> damages against the appellant, which may include
> but need not be limited to, costs, interest on the
> judgment, and expenses incurred by the appellee as
> a result of the appeal.

Tenn. Code Ann. § 27-1-122 (1980). Mrs. Ford insists that the issues raised on appeal by Metro have no merit and that the trial court's decision was well grounded in law and fact and reached without "the intervention of a jury." Metro has failed to point to any error or prejudice in the record that would justify an appeal as to Mrs. Ford.

We have reviewed this record and are of the opinion that as to defendant/appellee, Gloria Ford, this was a frivolous appeal.

9

Therefore, we remand this case to the trial court for a determination of the amount of damages to which Mrs. Ford would be entitled as a result of this appeal.

We are of the opinion that the trial court followed the dictates of Tennessee Code Annotated section 29-20-307 and section 29-20-313(b) and determined the issues of fault and damages raised in the claims. Metro has failed to show any error committed by the trial court other than a difference in the verdicts; however, these differences were the result of Metro's own legal maneuvering.

The judgment of the trial court is affirmed, and the cause is remanded to the trial court for further proceedings in conformity with this opinion. Costs on appeal are assessed to defendant/appellant, Metro.

_____
SAMUEL L. LEWIS, JUDGE

CONCUR:


_____
HENRY F. TODD, P.J., M.S.


_____
BEN H. CANTRELL, J.

10